UNITED STATES FEDERAL DISTRICT COURT          WESTERN DISTRICT OF WISCONSIN

Daniel Tepoel                                                           Petitioner

v.                                                                      Case No.:_____

                                                                        US District Court Case: 07-cr-66 bbc

United States of America                                                Respondent

### A 28 U.S.C. § 2255 Motion

Petitioner Dan Tepoel ("Tepoel") moves the court to set aside his conviction and sentence. He requests a new trial based on constitutional rights being violated under the 1st, 5th and 6th Amendments of the U.S. Constitution. Supporting affidavit and exhibits are attached.

### BACKGROUND

The District Court ruled Tepoel constructively waived his right to counsel and was forced to go to trial Pro Se. He was convicted on eight counts of white collar crimes and sentenced to 136 months. A direct appeal was decided in 2009. Next, a U.S. Supreme Court petition was denied on October 17th, 2009. The motion here is timely.

### ARGUMENT

The District Court err'd in ruling that Tepoel had to go Pro Se in his own criminal trial. Second, Tepoel's last appointed trial counsel was ineffective and caused in part the resulting Pro Se order. From the trial court abusing its discretion and his last attorney being ineffective Tepoel's constituational rights of the right to be heard, the right to redress his grievances to the government, the right of due process and to effective assistance of counsel were all denied and/or violated.

One who has been convicted without raising the issue of competence to stand trial

1

may raise the issue by means of a post-conviction collateral attack, such as a petition

for a writ of habeas corpus. For federal prisoners, a motion for relief under 28

U.S.C. § 2255. See Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815

(1966); Lee v. Alabama, 386 F. 2d 97 (5th Cir. 1967)(en banc). Here in this case the

trial court had an even higher level of standard to protect Tepoel than in Pate v.

Robinson where it was the competency of a defendant who was represented by a licensed

attorney. Tepoel was not only appearing as a defendant to stand trial he was acting

as his own attorney Pro See too. Where either the court, or the government, had a

duty to act in regard to establishing the defendant's competency to stand trial,

each failed to do so, then the petitioner should not be further prejudiced by

placing upon him the burden to prove incompetency in a § 2255 motion. See U.S. v.

Stokes, 211 F.3d 1039, 1043 (7th Cir. 2000)(court declined to hold that petitioner

should carry the burden of proof, refering to U.S. v. Hollis, 569 F.2d 199 (3rd Cir.

1977)). In Hollis the question of competency was raised prior to conviction. But in

Stokes it was never raised but found to be true after conviction. Tepoel's case is

closer to Stokes than Hollis. This issue was not raised before but that does not make

it untrue. Both Stokes and Hollis had court appointed, experienced counsel, here

Tepoel did not. There is a higher standard first here, and second an exception can

be invoked here placing the burden on the government and court, not Tepoel. It is

not Tepoel's fault in not raising the issue earlier and the nature of the issue

lends itself to the reasoning that it would not be appropriate for the burden of

proof to be placed upon him either. See Hollis, Stokes; see U.S. v. McCloud, v.

Rundle, 402 F.2d 853, 857 (3rd Cir. 1968).

Tepoel did not have the requisite competency to be tried with himself acting as

trial counsel. This was a denial of his due process rights given his mental state.

"Person who lacks capacity to consult with lawyer and assist in preparing defense may not be tried." See Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). It is a violation of due process according to DROPE "...and whether his trial lawyer was ineffective for not bringing the issue to the court's attention." Id. Incompetency to stand trial implicates due process rights. Id. "Competency to stand trial requires the ability to understand the nature of the proceedings, to consult with counsel, and to assist counsel in preparing a defense." See U.S. v. Berry, 565 F. 3d 385, 389 (7th Cir. 2009). Here the court transcripts show Tepoel did not give coherent responses to the court's questions, or to legal arguments. He did not understand the nature of the proceedings whether in the pre-trial hearings, during the trial or in meetings with his court appointed attorneys. Each attorney stood before the lower court and stated the problems, difficulties and lack of grasping the issues Tepoel was attempting to convey to them. See hearing and trial transcripts of appointed attorneys responses before the trial; trial transcripts of Tepoel's confusion and incoherence.

Over defendant Tepoel's lifetime he has been in two horrific car accidents. Both caused severe head trama. One occurred in his teens and the other when he was an adult. These were impactful head-on and a roll over type accident. His medical records support these claims. There are doctors and people who can testify to the accidents and the trama, injuries, they caused. Unfortunately the records were destroyed at one location. See Lake Superior Medical Society letter dated October 7th, 2010 attached. The other medical information, from St. Mary's Duluth Clinic were/are stored on micro-fiche and it has deterioated with time. See 3 pages including letter attached marked as Exhibit B. Tepoel was rejected out of the military too and has attempted in good faith to obtain those records too. See Exhibit C.

Tepoel is not claiming he is mentally incompetent to appear and stand before a court as a defendant. He is not pleading insanity. He is claiming he was not of a

mental state, or capacity, to appear Pro Se as the trial court ordered him to do so. See March 12th, 2008 ex-parte hearing transcript, pages 7-13. He did not possess the reasoning capacity to take on such a task. Mental capacity in this instance is recognized by the 7th Cir. as one of being diminished. See U.S. v. Miranda, 505 F. 3d 785, 792 (7th Cir. 2007); U.S. v. Anderson, 547 F. 3d 831, 832 (7th Cir. 2000). It is also recognized by the U.S. Sentencing guidelines. See In Re U.S.S.G. § 5K2.13.

The court, nor any of the appointed attorneys, investigated or even raised the thought of a possible mental affliction as a cause of Mr. Tepeol's behavior before the court(s). There was no inquiry into his lack of mental awareness. Yet there are numerous indications throughout the court record, by several parties, which should have raised yellow flags. First, "the magistrate judge noted the strange change in position..." of Mr. Tepoel at a hearing on May 2nd, 2008. See Govt's Brief as Appellee to 7th Cir. No. 08-2477, page 12, Exhibit C here. The Govt. itself admitted that Tepoel's legal arguments were "incomprehensible" and contained "irrelevant personal commentary." Id, page 14. Tepoel's arguments included quoting Aristotle in his appeal brief believing it to be a valid legal argument before that court, in his mind for his case. (R. 143 p.2; A-A), Exhibit D here. The Govt. further described Tepoel as "obstinate" which is defined by Webster's Dictionary as "not yielding to reason". Asking judicial notice be taken of said dictionary.

Further evidence of a deficient mental state to appear as his own counsel at a criminal trial is the pattern of breakdown's with the court appointed attorneys. Each of the three had their own comments to the court. The first citing an "irremediable breakdown in communication" between him and Tepoel. The second attorney actually filed twice with the lower court to withdraw from the case. This second attorney also failed to recognize the diminished mental state of Mr. Tepoel for what it was: a mental afflication lowering his capacity to represent himself at a complex criminal trial. The district court did make a decision before trial that Tepoel

4

constructively waived his right to counsel. This would have been a correct decision
except for the fact that the court failed to recognize Tepoel's mental affliction.
A condition which placed Tepoel in a state of mind which in no manner could he
effectively act as his own counsel. The court failed to take the cautionary and
protective measures due Tepoel before, during and after removing his last counsel
and forcing him to go Pro Se. Tepoel admitted in a Farretta hearing that he was
not able to represent himself for lack of legal experience too. See March 14th, 2008
hearing transcript, pages 5-6, Exhibit E here. The state of mind of the district
court at a critical time is shown by its words "It doesn't matter to me why this is
true (saying Tepoel could not work with any attorney the court appointed)". Where in
fact at every appearance before the district court Tepoel was dilatory and showed
delinquency in pursuing his defense by himself. Tepoel didn't have a rational and
factual understanding of the criminal proceedings against him. The district court
failed to fully uphold its constitutional duty to ensure that the defendant only
represents himself with full awareness that him (Tepoel) causing a waiver of counsel
would be fraught with dangers. See Moya-Gomez, 860 F.2d at 732; see also Patterson,
487 U.S. at 298 (citations omitted). The district court did warn Tepoel that he might
cause a constructive waiver of counsel but no where on the record did the lower court
hold a formal inquiry where it fully informed Tepoel of the dangers, the risks of
having to proceed Pro Se. The district court never explicitly advised against what
the end result of representing, or having to represent himself, Pro Se would be. See
Moya-Gomez, 806 F. 2d at 733. The district court failed to make aware Tepoel of the
difficulties he would encounter in acting, no matter how he got to Pro Se status, as
his own counsel." See Belanger, 936 F. 2d at 918-919 (citations omitted). It is a
high question if Tepoel knew the difference between right and wrong, was he aware of
his incapacity and to what degree. The court and all the appointed attorneys failed
to recognize this defect. A trial defense lawyer is ineffective if a mental issue is

not brought to the court's attention. See Drope v. Missouri, 420 U.S. 162, 171, 95

S. Ct. 896, 43 L. Ed. 103 (1975); Dale v. U.S., 498 F. 3d 604, 2007 (7th Cir. 2007)

(government ordered to respond to § 2255 on mental issue claim). If there is any

doubt to the issue of Tepoel being able to act as his own counsel (unwillingly) by

court order he is entitled to a hearing on the issue. See U.S. v. Marshall, 458,

F.2d 446, 450 (2nd Cir. 1972); Pate v. Robinson, 383 US, at 385, 15 L. Ed. 2d 815,

(1966). He was denied due process by the trial court's failure to sua sponte inquire

into his mental affliction. It gave rise to a bona fide doubt about competency and

is a question of fact (to act as his own counsel). See Maggio v. Fulford, 462 U.S.

111, 117, 103 S. Ct. 2261, 2264 (1983).

Forcing Tepoel to act as his own counsel, with the failure to fully apprise him of

the dangers, failure to hold an inquiry, rises to a structural defect which affected

the framework within the judicial proceedings against him. Thus, this motion must

be granted. See Chapman v. California, 386 U.S. 18, 87 U.S. Ct. 824, 17 L. Ed. 2d

705 (1967). There was a void of Tepoel's basic constitutional protections. He didn't

know to ask for an inquiry, he did not want to proceed Pro Se. His last appointed

attorney mislead him to think that a trial defense was going to be prepared. Tepoel

did inform the court of this at the March 12th, 2008 hearing. See Exhibit F, pages

4-6. Court appointed defense counsel Morris Berman led Tepoel to believe that a

trial strategy and defense was being prepared. Then 10 days before the March 22nd

2008 trial date, when Tepoel and Berman met, Berman simply informed Tepoel that he

had done nothing to prepare at all to go to trial. Where Berman shocked Tepoel and

said they were going to plea deal. This was never discussed ever between Tepoel and

Berman. Tepoel informed Attorney Berman that he wanted to go to trial and never, ever,

mentioned he was seeking a plea deal. Berman sprung this on his client just 10 days

before a complex criminal trial. It was Tepoel's right and decision to go to trial or

6

to seek a plea deal, not Berman's. See 42 U.S.C. 1981. Further, never once did Berman mention anything about a plea deal strategy until it was just 10 days before the trial. This prejudiced Tepoel as he could of technically hired a new defense attorney but in reality this could not possibly of have been accomplished. No defense attorney would take a large white collar criminal case with only 9 or 10 days to prepare.

Another point of lack of a mental capacity to act as his own attorney, unwillingly, is where most of Tepoel's written pleadings to the court pre-trial were written by a family friend out of Arizona. He informed the court of this at the March 12th, 2008 hearing. Tepoel failed himself to recognize and understand of how trite, smug, frivolous and incoherent these writings were. The net result however was that clear facts, documents, arguments and other evidence in his defense were never presented to the trial court. Evidence that would show that he came into the picture later and should not have been held accountable for all losses, for one example. Thus, he was not heard on the merits of his defense by the trial court violating his 1st and 5th amendment rights; not having counsel at trial, his 6th amendment rights too. See Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038, 35 L.Ed. 2d 297 (1973); Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 85 L. Ed. 2d 53 (1985)("among the minimum essentials of a fair trial is a defendant's right to be heard in his or her own defense and to offer testimony."). The fact that the trial only lasted 4 days against Tepoel supports this claim. There were 2 defendants named, 8 counts charged, numerous witnesses available and a complex set of events over a period of years to decipher through. Such base parameters would certainly cause a trial normally to last more than 4 days. This shows Tepoel did not have an understanding, or reasoning capability, of the events and proceedings against him. From the viewpoint of him acting as his own counsel, unwillingly, at a complex trial. This too violates due process as he was incompetent to do so. Not from an intellectual standard but from a diminshed mental capacity, or state, of which no party (the court, judge(s), appointed attorneys) picked up on pre-trial or during the trial. This violates due process. See Dusky v. U.S.,

7

362, U.S. 402 L. Ed. 2d at 824, 80 S. Ct. 788. Pate v. Robinson held that the failure of the court to observe procedures to adequately protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process rights to a fair trial. See Pate at 866 (citations omitted). Clarifying in this case that again, Tepoel is not arguing that he was incompetent to stand trial as a defendant. He is arguing that his last trial counsel failed him 10 days before trial. The district court failed to hold an inquiry into the matter further of Tepoel standing as his own counsel and failed to properly warn him of all the pitfuls of having to go Pro Se.

Tepoel was mentally deficient, to some unknown degree, to have to appear as his own counsel at trial. He had difficulties explaining concepts, past events, reasoning through arguments, expressing in detail and specificity events to other people. His claims here are meritous ones. See U.S. v. Dale, 498 F. 3d 604, (7th Cir. 2007). The errors made by counsel Berman and the trial court resulted in a fundamental denial of Tepoel's rights. See Greer v. Miller, 483 U.S. 756, 769, 97 L. Ed. 2d 618, 107 S. Ct. 3102 (1987); U.S. v. Sandles, 80 F. 3d 1121, 1148 (7th Cir. 1996). To what degree his mental incapacity was during the trial is unknown. However, it is clear from the record that his acts and words were dilatory in pursuing his defense. For example, in his Supreme Court petition, which he did write, he quoted Humpty Dumpty (in full) and also Alice in Wonderland. The second court appointed attorney, Mr. Ruth, stated to the magistrate Judge Crocker "...I try to accomodate the idiosyncrasies of the client, and I have tried in this case, but there's a point where you just can't do it...". Tepoel himself stated to the same court "To sit down and discuss it on the phone I'm going to do this, well, I need it in writing because I don't remember all that well and that's why I asked him [his attorney] to put it in writing...". Attorney Ruth went on to address the court "---this is, I think, a more unique situation because I think that the motions conflict is a symptom of a much bigger problem..." Another

8

appointed Attorney, Mr. Goldman, referenced that Tepoel was "...a nice guy, great guy." Stating additionally that he liked Tepoel but the pointed out he simply could not be his attorney any longer.

At the September 4th, 2007 hearing Tepoel demonstrated a complete lack of under-standing. See page 7, ¶ 20-25. Tepoel again demonstrated he had memory problems at the March 18th, 2008 pre-trial hearing. The district court said "Do you recall that discussion?"

> Tepoel: Not offhand, Your Honor.
> Court: Well, it was only last Friday. Do you remember anything I told you
> about what's going to happen and what sorts of things were going to
> be discussed and why?
> Tepoel: No.
> Court: I find that a little bit hard to believe, but let's go ahead and do it.
>
> March 18th, 2008 hearing, page 3, ¶ 14-22

And,

> Court: Have you had a chance before this morning to look at the Court's set of
> proposed jury instructions?
> Tepoel: No, Your Honor.
> Court: And I surmise from what you have told me previously that you don't
> remember me telling you to do that and be prepared to talk about that
> today?
> Tepoel: No, Your Honor.
> Court: Ok, well, let's make a record.

Tepoel was not misleading the court or trying to be coy. He answered honestly the questions of the court. Tepoel shows confusion when the court was questioning, speaking with him too. Id, page 28, ¶ 18-25; page 29 ¶ 1-12. This malady is prevalent throughout the pre-trial and trial proceedings when examining Tepoel's answers and/or statements before the court.

When the trial court ordered Tepoel to stand trial as his own attorney it immediately triggered a higher constitutional standard for the court to show some protections for Tepoel as they are the ones who utimately ordered him to go Pro Se just 10 days before trial. The court never asked, thought to ask, or consider if Tepoel was able to act Pro Se from a mental standpoint. If he was competent to litigate for himself.

The trial court had a duty to do this, and to warn Tepoel of what he was facing
by waiving, even through his own actions, counsel. See U.S. v. Tucker, 404 U.S.
443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); Farmer v. Haas, 990 F. 503 F. 3d
655, 321-22 (7th Cir 1993). The court failed to adequately warn Tepoel of the dangers,
disadvantages of self-representation prior to dismissing the last appointed attorney.
This violated his due process rights. See U.S. V. Sandles, 80 F. 3d 1121, 1148
(7th Cir. 1996); U.S. v. Egwaoje, 335 F. 3d 579, 585 (7th Cir. 2003). The court
surprised Tepoel in ordering him to proceed Pro Se as he was under the belief that
another attorney was appointed. But before the court took this drastic action it
still did not warn Tepoel enough, fully, that he was on a path fraught with danger.
See Moya-Gomez, 860 F. 2d at 732 (citations omitted). The 7th Circuit has advised
district courts to conduct a "formal inquiry in which the defendant is informed
fully of the risks of proceeding pro se and explicity advise against self-representation."
Id. at 733. No where on the record, pre-trial or at trial, did the district court ever
do this. At no time in the sequence of court appearances did the court ascertain
whether Tepoel truly understood the gravity of his actions. There was never any
level of "reality testing" to determine if Tepoel was indeed up to the task of
acting as his own counsel (willingly or not). The Faretta hearing was a complete
negative, yet that was more of a legal questioning session about knowledge of the
legal justice system and procedures in a criminal proceeding. The government
prosecutor should have also stepped up and questioned Tepoel's mental state. In
U.S. v. Sandles, the 7th Circuit stated it was perfectly appropriate for the Assist.
U.S. Attorney General, as an Officer of the Court, to assist the trial judge by
calling to her/his attention the possible inadequacy of the waiver due to mental
issues of any nature. See U.S. v. Bell, 901 F.2d 574, 577 (7th Cir 1990). The
government failed to do this and in fact took advantage of the situation as the
record at trial shows. Also, see Bell at 578.

Both the U.S. Supreme Court and the 7th Circuit has discussed extensively the
obligation of a trial court to ensure that a defendant who chooses to waive (not
mattering as to how) his right to counsel does so knowing the full consequences. The
High Court, "recognizing the enormous importance and role that an attorney plays at
the criminal stage," has "imposed the most rigorous restrictions on the information
that must be conveyed to a defendant, and the procedures that must be observed, before
permitting him to waive (or have it wavied for him) his right to counsel at trial."
See Patterson v. Illinois, U.S. 285, 298, 101 L. Ed. 2d 261, 108 S. Ct. 2389 (1987).
In particular:

> We have strongly suggested that a trial court, at a minimum, inquire of the
> defendant's age and level of education, and inform him of the crimes with
> which he was charged, the nature of those charges, and the possible sentences
> they carry. Further, a defendant should be made aware of the "difficulties he
> would encounter in acting as his own counsel." See U.S. v. Berlanger, 936
> F. 2d at 918, (7th Cir. 1996)(citations omitted).

Tepoel was never inquired of per these criteria set out by the 7th Circuit. He was
not warned by the magistrate or trial judge of the dangers of him losing his court
appointed counsel, no matter how that loss occurred. Both judges missed the subtle
mental warning signs. Tepoel did not understand or comprehend the consequences of
his decisions before the trial. He should have been "made aware of the dangers and
disadvantages of self-representation, so that the record will establish that he knows
what he is doing and his choice is made with eyes open." See Adams v. U.S. ex rel.
McCann, 317 U.S. 269, 279, 87 L. Ed. 268, 63 S. Ct. 236 (1942); Belanger, 936 F. 2d
at 918. Tepoel here in his case did not know what he was doing. The court failed to
warn him as the 7th Circuit advised and no inquiry was ever taken up on the issue as
the record is void of such. This motion must be granted. See U.S. v. Sandles, 80 F. 3d
1121, 1148 (7th Cir. 1996); See Moya-Gomez, 860 F. 2d at 735, 733; See Patterson,
487 U.S. at 298 (citations omitted).

In the STOKES case counsel never raised the issue of any mental state. The

11

defendant did not either. The court never requested or sought a mental examination.
That alone however did not excuse the trial court or the government from taking
action to ensure Stoke's rights were satisfied. See Stokes, 211 F. 3d 1039, 1043 (7th
Cir 2000); Drope v. Missouri, 420 U.S. 162, 95 S. Ct. 896, 43 L Ed. 103 (1975).
"Even when a defendant is competent at the commencement of his trial, a trial court
must always be alert to circumstances suggesting a change that would render the
accused unable to meet the standards of competence to stand trial." Id. 420 U.S.
at 181, 95 S. Ct. at 908. Further showing again that the trial court had a duty to
further investigate, ask questions, hold some type of inquiry, to instruct Tepoel
of the peril he was placing himself in, knowingly or unknowingly.

This all had the effect of dening him counsel at trial, wrongly. It also had the
effect of being denied to be heard. There were several relevant witnesses Tepoel
could have had testify on his behalf.  There were 7,000+ documents according to
his court appointed Attorney Goldman of which several could have been helpful in
Tepoel's defense. Without counsel at trial, and being in a limited mental capacity,
he was torn apart by the government prosecutor. A prosecutor who is also an Officer
of the court who also has a responsibility to ensure a fair trial. Objections should
have been raised numerous times against the prosecutor's actions. Pre-trial motions
should have been filed, additional key witnesses called and documents admitted to
BATES. Tepoel was prejudiced by being ordered to represent himself at the trial.
There were facts and events the jury never heard. Convicting a person while he is
incompetent, in some capacity, violates due process. See U.S. v. Bishop, 350 U.S.
961, 100 L Ed. 835, 76 S. Ct. 440 (1956); Dusky v. U.S., 362 U.S. 402, 80 S. Ct.
788, 4 L. ed. 2d 824 (1960). Evidence to the court can entail irrational behavior,
strange demeanor, a wide range of manifestations, subtle nuances. Id., Id. Or even
illogical actions. See Pate v. Robinson at 842. It did reach a fundamental defect
level which resulted in a miscarriage of justice against Tepoel. See U.S. v. Timmreck,

12

441 U.S. 780, 783, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979)(or an admission in-
consistant with rudimentary demands of fair procedure). Id. Ordering Tepoel to
act as his own counsel at trial was a constitutional error by the court. This
motion should be granted to correct this as Tepoel is imprisoned in violations
of his rights. See Barefoot v. Estelle, 463 U.S. 880, 887, 103 S. Ct. 3383, 77
L. Ed. 2d 1990 (1983). He has presented issues that are adequate enough to deserve
further proceedings. See Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595,
146 L. Ed. 2d 542 (2000). Chief Investigator John Reed's letter attached in support.

WHEREFORE, petitioner Daniel Tepoel respectfully requests this petition to
be granted and a post-conviction hearing to be granted forthwith.

Respectfully Submitted,                          10-15-10

Daniel Tepoel
Petitioner
06413-090
Federal Prison Camp
210
PO Box Duluth, MN   55814


I, Daniel Tepoel, certify that this petition was placed in the US Mail box on campus
on 10-15-10 to the U.S. District Court Clerk, W.D. of Wisconsin, and he further
claims the prison mail box rule; both under sworn oath penalities of perjury:

Daniel Tepoel                                    10-15-10